UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
-----------------------------------x
UNITED STATES OF AMERICA,          :     91-CR-685 (LAP)
                                   :
              Plaintiff,           :     ORDER
                                   :
      -v-                          :
                                   :
JOSE COLON                         :
                                   :
              Defendant.           :
-----------------------------------x
```

LORETTA A. PRESKA, Senior United States District Judge:

Before the Court is Mr. Colon's motion to reduce his sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A). (Dkt. nos. 1065, 1066.) The Government opposed, (dkt. no. 1070), and Mr. Colon replied, (dkt. no. 1071). For the reasons set forth below, the motion is granted.

I.   **Background**

A. **Offense Conduct**

From approximately 1984 until 1991, Mr. Colon participated in a conspiracy — known as the "Blue Thunder" organization - that distributed heroin in the Bronx and Manhattan. (September 13, 2020 Presentence Report ("PSR") ¶ 75.) Blue Thunder was a "hierarchical, pyramid-like" organization that consisted of "numerous tiers of positions associated with various levels of responsibility." (PSR ¶ 77.) Eric Millan was the "undisputed"

1

leader of the organization, and he delegated responsibility for the organization's day-to-day operations to three lieutenants: Ralph Rivera, Miguel Kercado, and Carlos Rivera. (PSR ¶ 77.) Mr. Colon ran one of Blue Thunder's distribution spots in the Bronx between at least 1986 and 1990, and he reported to Kercado. (PSR ¶ 80.) In total, Probation calculated that Blue Thunder was responsible for distributing over 500 kilograms of heroin, worth "well over" $100 million. (PSR ¶¶ 75, 98.) Although law enforcement recovered several firearms from Mr. Colon's residence when he was arrested there in August 1991 (PSR ¶ 85), the PSR makes no allegation that he (or any other members of the conspiracy) engaged in any acts of violence.

### B. Indictment, Trial and Sentence

After Mr. Colon was arrested on August 1, 1991, a grand jury indicted him on August 14, 1991, and returned several superseding indictments over the following months. (Dkt. nos. 166, 177, 209, 331.) In February 1993, Mr. Colon pleaded guilty to seven counts in one of the superseding indictments. (February 22, 1993 ECF entry.) In June 1993, however, Mr. Colon successfully moved to withdraw his guilty plea, (dkt. nos. 441, 473), after the Government disclosed — in the middle of the trial of Mr. Colon's co-conspirators — that three members of law enforcement involved in the investigation had themselves been

2

charged with narcotics trafficking. <u>See</u> <u>United States v. Millan-</u>
<u>Colon</u>, 829 F. Supp. 620, 624-25, 635-36 (S.D.N.Y. 1993).
Mr. Colon proceeded to trial and was ultimately convicted by a
jury in May 1994 of the three counts with which he was charged
in a trial-redacted superseding indictment: (i) conspiracy to
possess with intent to distribute heroin, in violation of
21 U.S.C. §§ 846 and 841(b)(1)(A); (ii) possession with intent
to distribute heroin, in violation of 21 U.S.C. § 841(b)(1)(C);
and (iii) possession of a firearm during and in relation to the
drug trafficking counts, in violation of 18 U.S.C. § 924(c).
(PSR ¶¶ 40, 45-46, 60). On October 19, 1994, Judge Kram
sentenced Mr. Colon to life imprisonment on the heroin
conspiracy count; 20 years imprisonment on the substantive
possession with intent to distribute count; and five years on
the § 924(c) count, to run consecutively. (PSR ¶ 60.)

### C. Postconviction Proceedings

On direct appeal, the Court of Appeals affirmed Mr. Colon's
convictions on the two drug-related counts but vacated his
§ 924(c) conviction in light of <u>Bailey v. United States</u>, 516
U.S. 137 (1995), and ordered that he be resentenced. <u>United</u>
<u>States v. Rosario</u>, 111 F.3d 293, 299 (2d Cir. 1997). Mr. Colon
was resentenced on October 18, 2000, about three months after
the Supreme Court decided <u>Apprendi v. New Jersey</u>, 530 U.S. 466

(2000). Judge Kram determined that, because the jury did not find drug quantity on the conspiracy count, the maximum term of imprisonment that the court could impose on that count was 20 years. (October 18, 2000 Sent. Tr. at 24-28 (Ex. 3 to dkt. No. 1066)). Judge Kram imposed a sentence of 20 years on each count, to run consecutively, for an effective sentence of 40 years — which, as this Court has written, "was the closest [Judge Kram] could get to the life sentence she had originally imposed." United States v. Millan, No. 91-CR-685 (LAP), 2020 WL 1674058, at *15, n.8 (S.D.N.Y. Apr. 6, 2020). The Court of Appeals affirmed Mr. Colon's convictions and sentence on direct appeal. See United States v. Millan, 22 Fed. App'x 35 (2d Cir. 2001). Judge Kram subsequently denied Mr. Colon's § 2255 motion, in which he asserted that his counsel was ineffective at various stages of the case. Colon v. United States, No. 91-CR-685 (SWK), 2003 WL 22517132 (S.D.N.Y. Nov. 6, 2003).

### D. Current Custody Status and Status of Co-Defendants

On June 27, 2020, the U.S. Bureau of Prisons (the "BOP"), pursuant to the Coronavirus Air, Relief and Economic Security Act (the "CARES ACT"),[1] released Mr. Colon to a halfway-house in

---

[1]    The CARES Act is a $2.2 trillion economic stimulus bill signed into law in March 2020 to address the fallout from the COVID-19 pandemic. Among other things, the CARES Act authorizes the Director of the BOP to release inmates (footnote continued)

Brooklyn, NY.[2] Mr. Colon has not been in the BOP's physical

custody for over three years. Mr. Colon still remains

<hr>

(footnote continued) to halfway-house or home confinement to
reduce the threat posed by COVID-19 to the uniquely vulnerable
federal inmate population. See United States v. Johnson, Case
No. 98-CR-860 (ARR), 2021 WL 5755047, at *4 (E.D.N.Y. Dec. 3,
2021) (higher infection rates are a "natural outgrowth of
carceral settings, where people cannot practice social
distancing, control their exposure to large groups, practice
increased hygiene, wear protective clothing, obtain specific
products for cleaning and laundry, avoid frequently touched
surfaces, or sanitize their own environment"); United States v.
Skelos, Case No. 15-CR-317 (KMW), 2020 WL 1847558, at *1
(S.D.N.Y. Apr. 12, 2020) ("[j]ails and prison are powder kegs
for infection. People in jails and prisons cannot practice
social distancing, control their exposure to large groups,
practice increased hygiene, wear protective clothing, obtain
specific products for cleaning and laundry, avoid frequently
touched surfaces, or sanitize their own environments").

     More particularly, 18 U.S.C. § 3624(c)(2) authorizes the
BOP to release inmates to halfway-house or home confinement "for
the shorter of 10 percent of the term of imprisonment of that
prisoner or 6 months." The CARES Act expanded the authority of
the Director of the BOP to release inmates to halfway-house or
home confinement without judicial intervention, allowing the BOP
to "lengthen the maximum amount of time" for which an inmate may
be placed in halfway house or home confinement "as the Director
of the [BOP] determines appropriate," assuming "the Attorney
General finds that emergency conditions will materially affect
the functioning" of the BOP. See CARES Act, Pub. Law 116-136,
Div. B, Title II, § 12003(b)(2) (2020). Initially, the Director
of the BOP was required to recall inmates to custody following
the end of "the covered emergency period" – that is, "30 days
after the date on which the national emergency declaration
terminates." Id. § 12003(a)(2). Today, however, the Director of
the BOP's authority to recall inmates to custody is
"discretionary." (Exhibit 1 to dkt. No. 1066.)

[2] Mr. Colon has been housed at the Residential Reentry Management
New York facility in Brooklyn, N.Y. ("RRM Brooklyn") since his
June 27, 2020 CARES Act release. See (footnote continued)

technically in BOP custody with a projected release date of
October 2025 with good conduct time. (See Ex. A to dkt. no. 1070
(BOP Inmate Profile)).

Mr. Colon is the last of the charged defendants to remain
in BOP custody on this case. Specifically:

- In April 2020, this Court granted compassionate
  release to Eric Millan, reducing his life sentence (of
  which he served 28 years) to time served. See Millan,
  2020 WL 1674058, at *1, *15.

- With respect to Millan's deputies: (i) Ralph Rivera
  was sentenced to life, which this Court reduced to 30
  years pursuant to the drug-quantity amendments to the
  Guidelines, and Rivera was released from BOP custody
  in 2017, see id.; (ii) Carlos Rivera was sentenced to
  time served after trial (see dkt. no. 748); and
  (iii) Miguel Kercado was sentenced to 20 years after
  pleading guilty in 1992 and completed his sentence in
  2009 (see dkt. no. 554).

- Two of the organization's suppliers who were convicted
  at trial were Alfred V. Bottone and Alfred Bottone Jr.
  The elder Bottone was sentenced to life and died in
  prison in 1997, and Bottone Jr. was sentenced to 30
  years imprisonment and completed his term of
  imprisonment in 2012. Millan, 2020 WL 1674058, at *15.

- The final individual convicted at trial with Mr. Colon
  was Myles Coker. In 2013, this Court reduced Coker's
  original sentence of life to 292 months as part of the
  drug-quantity amendments to the Guidelines, which
  amounted to a time served sentence. Id.; dkt. no. 994.

---

(footnote continued) https://www.bop.gov/ locations/ccm/cnk/
(last visited Oct. 13, 2022).

### E. **The Motion**

Mr. Colon filed the instant motion, with the assistance of appointed counsel, on October 14, 2022. (Dkt. no. 1066.) In the motion, Mr. Colon asks that his sentence be reduced to time served plus a five-year term of supervised release. (Id. at 1.) He asserts that this sentence reduction is supported by the following factors, which, considered independently or in combination, constitute an extraordinary and compelling reason for release: (i) his CARES Act release and conduct while on release; (ii) the length of his sentence and the "unwarranted sentence disparity" associated with continuing his sentence; (iii) his "genuine and outstanding" rehabilitation; (iv) his character, as reported by his family members; (v) his remorse and acceptance of responsibility; (vi) the fact that he does not present a continuing danger; and (vii) the risks presented by the COVID-19 pandemic. (See dkt. nos. 1066, 1071.) The Government argues that these factors relate only to rehabilitation. (Dkt. no. 1070.)

### II.  **Applicable Law**

Under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018, a court upon a defendant's motion may reduce his term of imprisonment

after considering the factors set forth in section
3553(a) to the extent that they are applicable, if it
finds that . . . extraordinary and compelling reasons
warrant such a reduction . . . and that such a reduction
is consistent with applicable policy statements issued
by the Sentencing Commission.

The First Step Act allows district courts "independently to
determine what reasons, for purposes of compassionate release,
are 'extraordinary and compelling.'" United States v. Brooker,
976 F.3d 228, 234–37 (2d Cir. 2020). District courts
adjudicating 18 U.S.C. § 3582(c)(1)(A) sentence reduction
motions have the discretion to consider, "whether in isolation
or combination," the "full slate of extraordinary and compelling
reasons" that a defendant might present as grounds for a
sentence reduction. Id. at 237-38. But the "existence of
'extraordinary and compelling reasons' for a reduction does not
mean that a district court must release the defendant." United
States v. Madoff, 465 F. Supp. 3d 343, 349 (S.D.N.Y. 2020). If a
court finds that a defendant has established an extraordinary
and compelling reason for a reduction in sentence, it must then
consider the Section 3553(a) factors. Id. Those factors include
the nature and circumstances of the offense; the defendant's
history and characteristics; the need for the sentence to
reflect the seriousness of the offense, to promote respect for
the law, to provide just punishment for the offense, to afford

8

adequate deterrence to criminal conduct, to provide the defendant with needed medical care, and the need to avoid unwarranted disparities in sentences.

As the movant, the defendant bears the burden of proving that he is entitled to relief under 18 U.S.C. § 3582. Madoff, 465 F. Supp at 349; see also United States v. Butler, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease.").

As detailed above, on June 27, 2020, Mr. Colon was released from BOP custody pursuant to the CARES Act to RRM Brooklyn. Thus, he was not able, while in custody, to submit a request to the Warden at FCI Fairton (where he was housed until his CARES Act release) for an 18 U.S.C. § 3582(c)(1)(A) sentence reduction. Accordingly, on August 26, 2022, counsel submitted a request for a sentence reduction on behalf of Mr. Colon to the Warden at FCI Fairton and the Manager of RRM Brooklyn (where he has been for the past three years). (Exhibit 4 to dkt. no. 1066.) Neither the Warden at FCI Fairton nor the Manager at the RRM Brooklyn responded to that sentence reduction request within thirty days. Thus, Mr. Colon has exhausted his administrative remedies and is now statutorily authorized to present the instant 18 U.S.C. § 3582(c)(1)(A) sentence reduction motion. See

United States v. Maldonado, No. 16-CR-285 (CM), 2021 WL 639069, at *2 (S.D.N.Y. Feb 17, 2021) ("On November 5, 2020, pro bono counsel made a new application to the BOP for compassionate release, citing, inter alia, Maldonado's medical conditions, and increased risk for severe illness should he contract COVID-19. That application was denied on November 10, 2020. Accordingly, Mr. Maldonado has exhausted his administrative remedies, and his motion is properly before the court") (internal citations omitted); United States v. Gonzalez, No. 11-CR-718 (PGG), 2021 WL 535809, at *2 (S.D.N.Y. Feb. 11, 2021) ("Gonzalez submitted a request for compassionate release to the CI Rivers Facility Administrator on July 22, 2020. His application was denied on August 7, 2020. The Government concedes that Gonzalez has exhausted his administrative remedies. The Court concludes that Gonzalez has satisfied the exhaustion requirement.") (internal citations omitted).

### III. **Discussion**

The Government argues only that Mr. Colon's motion should be denied because the factors he relies on for a finding of "extraordinary and compelling reasons" for a sentence reduction all relate solely to his rehabilitation. (Dkt. no. 1070 at 4-6.) In fact, however, Mr. Colon has presented numerous reasons unrelated to his rehabilitation that, considered together,

establish the existence of "extraordinary and compelling reasons" for a sentence reduction. See Brooker, 976 F.3d at 237, (district courts adjudicating 18 U.S.C. § 3582(c)(1)(A) sentence reduction motions may consider – "whether in isolation or combination" – the "full slate of extraordinary and compelling reasons" that a defendant might present as grounds for a sentence reduction).[3]

First, Mr. Colon was released to a halfway house in Brooklyn under the CARES Act on June 27, 2020 -- over three years ago. During that time, he has been working full time at Liberty Pest Control where he has been characterized as "an outstanding employee." (Ex. 6 to dkt. no. 1066.) He is now engaged to Diana Reyes, with whom he looks forward to rebuilding the life he lost more than three decades ago. He is spending his free time with his brother, sister and four children as well as Ms. Reyes and her children, family and friends. And, significantly, he has had no contact whatsoever with law enforcement over the course of his three years of CARES Act release. (Dkt. no. 1066 at 16.)

---

[3] Notably, though, the Government concedes that Mr. Colon's rehabilitation is both "significant" and "commendable." (Dkt. no. 1070 at 6.)

Likewise, the length of Mr. Colon's sentence (forty years) and the amount of time he has already served (more than thirty-three years) – facts unrelated to his rehabilitation – support the conclusion that "extraordinary and compelling" reasons exist for a reduction of Mr. Colon's sentence to time-served. See, e.g., United States v. Maumau, 993 F.3d 821, 837 (10th Cir. 2021) (district court had discretion to grant a sentence reduction in part because of the "incredible length" of the defendant's sentence); Brooker, 976 F.3d at 237 (courts should consider "all possible reasons for compassionate release," including the "injustice" of the length of a defendant's sentence). Also, Mr. Colon is the only individual convicted in the "Blue Thunder" case who remains in custody today, even though he was not one of the organization's leaders or suppliers. (Dkt. no. 1066 at 18.) Continuation of his forty-year sentence therefore would operate as an unwarranted sentencing disparity – another fact unrelated to Mr. Colon's rehabilitation that supports the conclusion that "extraordinary and compelling reasons" exist for a reduction of his forty-year sentence to time-served.

And, finally, Mr. Colon does not (as demonstrated from his conduct over the past three years of CARES Act release and his preceding three decades of imprisonment) present a danger to any

individual or the community at large – a factor that may reflect his rehabilitative efforts but is not his rehabilitative efforts themselves and a factor that, again, supports the conclusion that "extraordinary and compelling reasons" exist for a reduction of Mr. Colon's sentence to time-served. Among other things: (1) Mr. Colon had no disciplinary violations in his final fourteen years in prison and no disciplinary infractions whatsoever involving drugs, alcohol, weapons, violence or BOP staff over his more than thirty years in prison (except for two twenty-five-year-old violations for possession of intoxicants) (Ex. 14 to dkt. no. 1066); (2) he has had no contact whatsoever with law enforcement over his three years of CARES Act release; (3) he has a full-time job at which he plans to continue working; and (4) he is engaged and rebuilding his life after more than three decades behind bars so that he remains a productive and law-abiding member of society. Taken together, these facts, in the Court's view, constitute "extraordinary and compelling reasons" for a sentence reduction.

Consideration of the § 3553(a) factors also counsel a sentence reduction. With respect to the nature and circumstances of the offense, Mr. Colon has acknowledged the severity of his conduct and has accepted full responsibility for it. (Ex. 13 to dkt. no. 1066.) Nevertheless, a sentence of some thirty-three

13

years is certainly sufficient to reflect the serious nature and
circumstances of Mr. Colon's offense. Indeed, several other
courts in the Southern and Eastern Districts of New York and
elsewhere have reduced life sentences to time-served for
defendants who engaged in far more egregious criminal conduct,
even offenses involving violence and murder. See, e.g., United
States v. Monsanto, No. 87-CR-555 (LAP), 2021 WL 355049, at *1
(S.D.N.Y. Feb. 2, 2021) (reducing life sentence to time-served
after thirty-four years imprisonment for a defendant who was
"the leader of a heroin distribution network . . . that
distributed massive amounts of heroin in New York City and the
northeastern United States" and whose organization "was an
extremely violent group that consistently used fierce tactics to
secure its position in the heroin business and to enforce
discipline within its own ranks"); United States v. Underwood,
No. 88-CR-822 (SHS), 2021 WL 3204834, at *1 (S.D.N.Y. Jan. 15,
2021) (reducing life sentence to time-served after more than
thirty years imprisonment for a defendant who was convicted "as
the leader of a violent heroin-trafficking organization
operating throughout New York City" – a "group" that "was
responsible for at least five murders, and one attempted murder,
committed at [the defendant's] direction"); United States v.
Fisher, 493 F. Supp. 3d 231, 236 (S.D.N.Y. 2020) (reducing life

sentence to time-served for a defendant who was convicted not
only of major narcotics trafficking but who also "personally
committed" four murders and whose indictment also included
"allegations of discussing, conspiring towards, and attempting
the murder of other individuals"); United States v. Paz, No. 92-
CR-172, 2020 WL 3958481, at *1 (D.N.J. July 10, 2020) (reducing
life sentence to time-served for a defendant who "was involved
in a nationwide transportation network that distributed at least
2,500 kilograms of cocaine in the United States from
approximately July 1990 to May 1992" and who "worked with
Colombian drug cartels"); United States v. Tidwell, 476 F. Supp.
3d 66 (E.D. Pa. 2020) (reducing life sentence to time-served
after twenty-six years imprisonment for defendant convicted of
engaging in a continuing criminal enterprise and two counts of
murder in furtherance of that enterprise as well as terms of
years for multiple drug possession, tax evasion and firearms
counts). Again, it bears noting that all of the individuals with
whom Mr. Colon was convicted at trial have been released from
prison. He is the only one still in custody.

Mr. Colon's history and characteristics, including his
rehabilitation, also support a sentence reduction. Mr. Colon's
criminal conduct and associations – given that he has spent more
than three decades in custody – "provide an outdated and

incomplete glimpse into" his history and characteristics. United States v. Clausen, No. 00-CR-291, 2020 WL 4601247, at *2 (E.D. Pa. Aug. 10, 2020). He is no longer a "street guy" involved in a narcotics distribution organization. Rather, today, he is a mature and responsible sixty-three-year-old man who has worked tirelessly for more than three decades to evolve into a better version of himself. During his incarceration, at a time when he had no hope of release, he completed more than 5,600 hours of BOP rehabilitative programming, including a 1,000-hour housekeeping apprenticeship, approximately 2,700 hours of post-GED educational courses and additional rehabilitative programming (that is, courses in topics ranging from life skills to physical fitness to parenting to Native American culture). (Exhibit 12 to dkt. no. 1066.) Also, like today, Mr. Colon for years held full-time UNICOR Federal Prison Industries jobs while in custody, including work as a forklift operator, a materials manager, a furniture sealer, a quality assurance inspector and essentially as a seamstress (mending, modifying and constructing garments and other articles according to particular specifications and needs). He received excellent reviews for his work. (Exhibit 11 to dkt. no. 1066.) And, during his more than three decades behind bars, Mr. Colon deepened his faith, becoming a practicing Christian and attending church every

16

Sunday (a practice he continues today). (Exhibit 13 to dkt. no. 1066.)

During his incarceration, Mr. Colon had a "clean" disciplinary record – no disciplinary infractions whatsoever in fourteen years and no disciplinary infractions whatsoever involving drugs, alcohol, weapons, violence or BOP staff (except for two twenty-five-year-old violations, at the beginning of his prison term, for possession of intoxicants). (Exhibit 14 to dkt. no. 1066.) Mr. Colon's historical disciplinary infractions (such as being insolent to a staff member, possessing gambling paraphernalia and refusing to obey an order) are not the types of infractions about which the Court is overly concerned.

Finally, in his over three years of release, Mr. Colon has demonstrated that he is not a danger to the community. He has lived and worked productively without any law enforcement contact.

Protecting against unwarranted sentencing disparities also counsels for a sentence reduction. As noted above, all of the co-defendants who were senior to Mr. Colon in Blue Thunder leadership have been released from prison. Failing to reduce his sentence would result in an unwarranted sentencing disparity.

Finally, reducing Mr. Colon's 40-year sentence to time served of some 33 years is more than sufficient to promote

respect for the law, provide just punishment, and afford general deterrence.

### IV.   **Conclusion**

For the reasons stated above, Jose Colon's motion to reduce his sentence to time served, (dkt. nos. 1065, 1066), is granted. He will serve a period of five years on supervised release with the special conditions imposed by Judge Kram.

The Clerk of the Court shall close the open motion. (Dkt. no. 1065.)

**SO ORDERED.**

Dated: New York, NY
        September 26, 2023

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge

18